IN THE MATTER OF APPEAL OF W. P. ROSE BUILDERS SUPPLY COMPANY;
A. T. GRIFFIN MANUFACTURING COMPANY; GEORGE S. DEWEY,
TRADING AS DEWEY BROTHERS; BROWN PAVING COMPANY, AND
JAMES E. BRYAN.

(Filed 6 April, 1932.)

**1. Municipal Corporations H a — Rules for construction of municipal ordinances.**

In construing an ordinance the language used will be interpreted in
the light of surrounding circumstances and the words employed will be
given their ordinary meaning and significance, and in this case involving
the interpretation of a clause in a zoning ordinance exempting from its
operation buildings started within ninety days under permits previously
granted, the word "started" is held to mean "commenced" or "begun."

**2. Municipal Corporations H b—Whether property in this case came within exemption in zoning ordinance held question for jury.**

Where a municipal zoning ordinance divides a city into zones and pre-
scribes uniform regulations as to buildings in the respective zones, but
provides that it shall not affect buildings for which permits had been
issued prior to its enactment if work under such permits was started
within ninety days after the operative date of the ordinance: *Held*,
where a permit for a filling station is granted prior to the enactment of
the ordinance and the owner, in good faith, before the expiration of the
ninety days, places filling station equipment and supplies on the premises
with the intention of operating the station in conformity with the au-
thority previously given: *Held*, whether the filling station had been started
as contemplated in the exemptive clause of the ordinance is a question
for the jury, and it may not be decided as a matter of law, and the fact
that the city board of adjustment was clothed with certain discretionary
powers does not affect the owner's rights under the ordinance.

**3. Same—Exemptions in zoning ordinances should be construed in favor of property owners.**

Zoning ordinances are in derogation of the right of private property,
and where exemptions appear in favor of the property owner, they should
be liberally construed in favor of such owner.

CIVIL ACTION, before *Cranmer, J.*, at August Mixed Term, 1931, of
WAYNE.

The plaintiffs are the owners of a brick building on the corner of
George and Walnut streets in the city of Goldsboro, which was con-
structed during the latter part of 1928 and the early part of 1929 as
a Union Bus Station and cafeteria. This building became vacant in
December, 1929. On 2 December, 1929, the owners of the building ap-
peared before the board of aldermen of the city of Goldsboro and asked
for a permit "to install two gas pumps in the present Union Bus Sta-
tion." The minutes of the board show the following with respect to such

request: "After some discussion, upon motion of Alderman Waters, duly seconded, this location was exempted from the restricted district, and permit was granted, such installation to be in conformity with ordinances governing filling stations." On 21 July, 1930, the board of aldermen of the city of Goldsboro duly adopted a zoning ordinance, which became effective on 15 August, 1930. This ordinance divided the city into five zones, and the property of plaintiffs was included in zone 1. In this zone no building was to be constructed or used "for any industrial or manufacturing purposes except retail stores, tailor shops," etc. It was further provided that "no building or land in zone 1 shall be used for any trade or industry that is noxious or offensive by reason of emission of odor, dust, smoke, gas fumes, vibration or noise."

Section 14 of the zoning ordinance in part provides: "It is not intended by this ordinance to repeal, abrogate, annul or in any way to impair or interfere with any existing provisions of law or ordinance, or any rules, regulations or permits previously adopted or issued or which shall be adopted or issued pursuant to law relating to the use or construction of building or premises." Section 17 of said zoning ordinance provides: "Nothing herein contained shall require any change in the plans, construction, size or designated use of any building, structure or part thereof for which a building permit has been granted by the building inspector before this ordinance becomes effective and the construction of which from such plans shall have been started within 90 days after this ordinance becomes effective," etc.

The building inspector of the city of Goldsboro refused to grant to the plaintiffs a permit for the installation of gasoline pumps and other filling station equipment in said building. The city brought a suit to restrain the owners from completing the gasoline filling station, and from the judgment rendered both parties appealed to the Supreme Court. This cause is reported in 200 N. C., 405, 157 S. E., 58. Thereafter the matter was heard by the board of adjustment, which rendered its decision in June, 1931. Said board found the following facts: "(a) That prior to the adoption of the zoning ordinance of the city of Goldsboro the owners of said property applied to the board of aldermen of the city of Goldsboro for permission to install two gasoline tanks on the premises, and the board of aldermen of the city of Goldsboro voted favorably on this application; (b) that after the adoption of the zoning ordinance a city official advised the owners of said property that if the property owners should act upon this authority of the board within ninety days from the effective date of the zoning law that they would not have to apply for a building permit; (c) that the only attempt of the owners of the property to act under whatever authority was granted

by the board of aldermen, within 90 days from the effective date of the zoning law, was to place in the building on the premises goods to be sold out of a filling station and grease dispenser; (d) that a filling station cannot be operated in 'Zone 1 Business' of the city of Goldsboro unless it comes within the exceptions set forth in said ordinance, which do not apply to the premises in question."

Thereupon the board of adjustment voted three to two approving the refusal of the building inspector to grant a permit. The plaintiffs by *certiorari*, appealed from the order of the board of adjustment to the Superior Court. Many affidavits were filed, and after hearing the pleadings and affidavits, the trial judge, after considering the entire case, was "of the opinion that the decision of the board of adjustment is in all respects proper, and that each of the grounds of error set out in the petition for writ of *certiorari* should be disallowed and overruled."

From the foregoing judgment plaintiffs appealed.

*Kenneth C. Royall and Andrew C. McIntosh for plaintiffs.*

*D. C. Humphrey, J. F. Thomson and Dickinson & Freeman for city of Goldsboro.*

BROGDEN, J. The plaintiffs assert:

1. That the zoning ordinance is unconstitutional.

2. That the property owned by them is exempted from the operation of the ordinance.

The last utterance of this Court upon zoning ordinances is contained in *Elizabeth City v. Aydlett*, 201 N. C., 602. In this case the philosophy of zoning ordinances is expounded and applied. All the usual grounds of assault upon the zoning theory were discussed with abundant citation of supporting authority. Moreover, the opinion draws a clear line of demarcation between the principles of law applicable to the zoning ordinance of Goldsboro and those governing cases similar to *Clinton v. Oil Co.*, 193 N. C., 432, 137 S. E., 183; *MacRae v. Fayetteville*, 198 N. C., 51, 150 S. E., 628, and others of like import. It is deemed unnecessary to decide the constitutionality of the entire zoning ordinance upon the particular facts presented by this record, if, as a matter of fact, the property of plaintiffs is exempt from the operation of the ordinance by the terms thereof. Hence, the inquiry arises: Are the restrictions of the zoning ordinance applicable to the property of plaintiffs upon the facts disclosed?

On 2 December, 1929, before the zoning ordinance became effective, the board of aldermen of the city of Goldsboro excepted the property of plaintiffs from the restricted district and granted a permit to install

"two gas pumps in the present Union Bus Station." The zoning ordinance became effective on 15 August, 1930, and the plaintiffs had 90 days from said date, under section 17 of the ordinance, to act upon the permit theretofore granted by the city. On 11 November, three days before the expiration of the time limit, plaintiffs placed upon the premises "a grease dispenser and goods to be sold out of a filling station." It will be observed that section 17 of the ordinance uses the expression: "And the construction of which from such plans shall have been started within 90 days after this ordinance becomes effective." The plaintiffs' contend that the placing of a grease dispenser and certain merchandise upon the premises constituted "construction   . . .   started." In other words, if plaintiffs had a permit to use the property for a certain purpose and placed upon the premises, in good faith, goods and equipment essential to such purpose, does such act bring them within the exemption of section 17 in the sense that the construction has started, or to compress the question in a smaller compass, when does construction start?

Manifestly, it serves no useful purpose to pick words to pieces and put them under a microscope in order to develop or disclose occult and. peculiar meaning. The law is disposed to interpret language in the light of surrounding circumstances and to give to words their ordinary meaning and significance. The word "started" used in section 17, interpreted in its setting, is doubtless synonymous with commence or begin. In Words & Phrases, First Series, Vol. 2, it is said: "The commencement" of a building within the mechanic's lien law, is the doing of some act upon the ground on which the building is to be erected, and in pursuance of a design to erect, the result of which act would make known to a person viewing the premises, from observation alone, that the erection of a building on that land had been commenced. Work done in breaking the ground for a cellar is a commencement of a building, because it must have changed the appearance of the ground so as to show the purpose of the work.

Courts are divided upon the question as to whether the placing of material upon a building site is a commencement of the building. The Texas Court in *Terry et al. v. Texas Co.*, 228 Southwestern, 1019, held that the placing of timbers for the erection of a derrick and machinery, including boiler, on the ground where an oil well was to be drilled, complied with the provisions requiring a person "to commence to drill," a well within a certain period. The Iowa Court in *Graw v. Manning*, 7 N. W., 150, discussed the meaning of the word "started." The statute in question provided in substance that if a debtor "started to leave the state" his property exemption was restricted to wearing apparel. The Court in discussing the meaning of the word "started," said that it "does

not mean the actual setting out on a journey, but means the commencement of the enterprise or undertaking; and one who had placed his wagon close to the house ready to be loaded with goods and a part of the goods were placed in boxes out of the house and the appearance in the house indicated a state of preparation for moving will be deemed to have 'started' to remove from the state."

So, in the present case, if the plaintiffs, in good faith, and in pursuance of a permit granted from the city of Goldsboro, had placed filling station equipment and supplies upon the premises with the intention of operating such station in full conformity with the authority previously granted, then it cannot be said, as a matter of law, that the construction had not started before the expiration of the time limit.

Zoning ordinances are in derogation of the right of private property, and where exemptions appear in favor of the property owner, they should be liberally construed in favor of such owner. Furthermore, it is to be noted that filling stations *eo nomine* are not expressly excluded from zone 1.

While the board of adjustment is clothed with certain power and discretion in determining questions affecting the administration of zoning ordinances, nevertheless in the case at bar, the controversy involves the inquiry as to whether under the facts and circumstances the zoning ordinance precludes the plaintiffs from installing the gas pumps in accordance with the permit from the city.

The plaintiffs contend that prior to the effective date of the ordinance they had started or begun the installation of the gas pumps in good faith. The city denies such contention.

Thus, an issue of fact is produced for the determination of a jury. Reversed.