GROVER C. STOWE, JR., AND WIFE, CAROLINE M. STOWE, v. HARRY W. BURKE AND GREENTREE CORPORATION.

(Filed 1 November, 1961.)

**1. Injunctions § 7— Purchaser may enjoin seller from using adjacent property for particular use in violation of representations inducing the purchase.**

In an action by purchasers of a lot to restrain the seller from proceeding with the construction of apartment houses on an adjacent development over which the seller had acquired control, equity may grant the injunctive relief upon allegations and evidence that as a material inducement for the purchase of the lot, the seller had represented that the adjacent development would be restricted to single-family dwellings, and that such contemplated use was in violation of zoning regulations, and the fact that at the time of the institution of the action the seller had begun construction and expended a small per cent of the total cost of the apartment houses does not preclude the equitable relief, there being findings supported by evidence that such expenditures were not made in good faith.

**2. Municipal Corporations § 25—**

When the owner of property has begun construction of buildings for a then lawful use, under authority of a building permit, and has expended funds in good faith for such construction at the time of the enactment of an ordinance prohibiting such use, such owner ordinarily has the right to complete such structures for such nonconforming use.

**3. Same—**

When at the time of commencing construction for a particular use the owner knows of the pendency of an ordinance proscribing such use and the hostility of owners of land in the neighborhood to such use, and commences such construction and hurries it along for the purpose of coming within the provisions of zoning regulations as to existing nonconforming uses, and there are findings supported by further evidence that the commencement of such construction was not done in good faith, such

owner does not have a vested right to complete the structure for the nonconforming use.

BOBBITT, J., concurs in result.

HIGGINS, J., dissents.

APPEAL by defendants from *Crissman, J.,* at August 14th Schedule A Civil Term of MECKLENBURG.

Civil action to enjoin defendant from erecting apartment houses on property adjoining that of plaintiffs.

By stipulation, the parties through their respective counsel agree that in accordance with Rule 19 of Rules of Practice of the Supreme Court only the First, Second and Fourth causes of action together with record proper shall constitute the case on appeal.

Plaintiffs in their complaint allege these causes of action: The First, based on fraudulent misrepresentations and concealment by defendant Burke; the Second, based on estoppel by the representations and promises of defendant Burke; and the Fourth, based on violation of the zoning ordinances of the city of Charlotte, North Carolina. Thus plaintiffs pray that defendants be enjoined from proceeding with the construction of any apartment building or multiple dwelling on the property in question and from extending Brookridge Lane for the purpose of providing access to such property.

By agreement of the parties jury trial was waived, and the court heard the evidence and found the facts to be substantially as follows:

Mrs. Lydia W. Brickell is the owner in fee of a tract of approximately 12 and 1/2 acres of land fronting 300 feet on Providence Road and at its nearest point is 1200 feet south of the intersection of Providence Road and Sharon Lane. Greentree subdivision is a subdivision adjacent to the Brickell property on the south. Plaintiffs are the fee simple owners of Lot 14, Block 3, of Greentree subdivision. The rear line of plaintiff's lot adjoins the Brickell property on a diagonal line for a distance of 149.72 feet. Brookridge Lane is one of the dead-end streets within Greentree subdivision and is the street upon which plaintiffs' property fronts. Charlotte Development Company owns the property which separates the northerly terminus of Brookridge Lane from the southerly boundary of the Brickell property.

In the spring of 1960, Charlotte Development Company undertook to develop the Greentree subdivision. Streets were laid out, building lots were subdivided, and building restrictions were placed on the subdivision. Since late August 1960 or early September 1960, defendant Burke has held 51% of the stock of Charlotte Development Company, has controlled its Board of Directors and has been President of

this company. He has since contracted to acquire all of the remaining outstanding stock of Charlotte Development Company.

In August 1960, the plaintiffs entered into negotiations with the defendant Burke, acting as agent for Charlotte Development Company, for the purchase of a tract of land for residential purposes, and the defendant Burke showed plaintiffs a number of lots in Greentree subdivision. In the course of these negotiations, plaintiffs advised defendant Burke that they were planning to sell their house and move to another neighborhood because they wanted to get away from the traffic serving an area of apartment houses and to live in an area that was restricted to single-family residences. Defendant Burke answered that there would be very little traffic in Greentree subdivision because it would be situated in a neighborhood of single family residences and that, in addition, there would be no throughway traffic in the area. By way of explanation, he represented and stated to plaintiffs that he intended to be personally responsible for maintaining the exclusive and restricted character of the Greentree subdivision, and he stated that Brookridge Lane would either continue to be a dead-end street or would only be extended into the property adjoining Greentree subdivision as a road to serve a neighborhood of single-family residences. In response to a direct question by the plaintiff Caroline M. Stowe as to what he would do if he acquired an interest in the Brickell tract, defendant Burke represented that he intended, if he acquired such an interest in said property to develop such property in the same manner as Greentree subdivision had been developed. Also in August 1960, as the plaintiffs were preparing to execute a contract to buy the lot which they now own, they told defendant Burke, "We don't want through traffic," and he replied that he would see that Brookridge Lane would be a dead-end street— under no condition would he ever jeopardize Greentree, his development.

On 30 August 1960, the plaintiff, Dr. Stowe, entered into a contract to purchase their lot from Charlotte Development Company. The plaintiffs knew that the zoning classification of their lot and the area surrounding their lot was Rural as of 30 August 1960.

On 24 February 1961, a deed to their lot was delivered to the plaintiffs from Charlotte Development Company. At that time, defendant Burke repeated that he would not open up Brookridge Lane, and stated that if he got the Brickell property, he would develop one-family dwellings there. Plaintiffs paid Charlotte Development Company $9,-000.00 from joint funds as the full purchase price for the lot on 24 February 1961.

On 8 March 1961, defendant Burke stated to Dr. Stowe that he would do all he could to see that single-family residences were placed

on the Brickell property. In reliance on this statement, the plaintiffs entered into a contract with Charlotte Development Company for the construction of a residence on their lot for $27,919.00.

The court further found as fact that no later than the first part of April, 1961, defendant Burke intended to promote the erection of apartments on the Brickell property and to provide for the opening of Brookridge Lane to accommodate traffic from such apartments. On 11 May 1961, the defendant Burke entered into an agreement to lease the Brickell Property from Mrs. Brickell for purposes of constructing the proposed apartment project.

Around the first of April, 1961, plaintiff Mrs. Stowe heard that some apartments were possibly going to go up on the Brickell property. She mentioned this to defendant Burke, who replied, "I don't know anything about it." Mrs. Stowe asked, "Would you open up the road to avail traffic to the apartments?" Mr. Burke replied that he would not open up the road to facilitate traffic to the apartments.

On 5 April 1961, the Charlotte-Mecklenburg Planning Commission presented to the Charlotte City Council a proposed ordinance and a preliminary report for a proposed comprehensive zoning plan as required by G.S. 160-177. The proposed zoning plan would modify the schedule of classification under the Zoning Code of the City of Charlotte and would re-classify large areas within the City of Charlotte which proposed plan was given extensive newspaper publicity and was made available for detailed public inspection on 6 April 1961, and thereafter. The classification of the area including the plaintiffs' property and the Brickell property under the proposed ordinance is Residence 15, a classification permitting basically only single-family dwellings and duplexes on corners. As early as 6 April 1961, the defendant Burke was aware of the existence of the proposed ordinance and the effect it would have on the Brickell property. On 24 April and 1 May 1961, notices of public hearings on the proposed ordinance were published as required by G.S. 160-175, and public hearings were held on 12 May and 19 May, 1961. No objection to the proposed ordinance was raised at these hearings.

On 11 May 1961, a handwritten agreement to lease was entered into between Mrs. Brickell and defendant Burke under the terms of which she agreed to lease her property to the defendant Burke or his assigns for a period of 45 years for the purpose of constructing apartment buildings thereon.

Thereafter, the defendant Burke engaged an architect to prepare plans for the proposed apartments, which plans were submitted to the Charlotte Building Inspection Department in May 1961, and which provided for the extension and opening of Brookridge Lane

to provide access to the apartment development parking lot for 32 family units, and through the development by a ten-foot service road to the single exit therefrom on Providence Road.

On June 1st, 1961, defendant Burke and plaintiff Stowe discussed plaintiffs' new house, and it appeared that all parties were pleased with it. Defendant Burke made no mention of the possibility of apartments on the Brickell property, "just the fact that he would not open up the road to facilitate apartments."

The defendant Greentree Corporation was incorporated under the laws of North Carolina on 6 June 1961. Defendant Burke was the sole stockholder in and president of the defendant corporation. On 14 August 1961, defendant Burke testified that "at the present time" C. H. Carlough is the owner of 50% of the stock in Greentree Corporation. There is no evidence of the date of acquisition of stock by Carlough, and the court below therefore found a presumption that the state of facts existing on 22 June, 1961, sole ownership by Burke, continued to exist until otherwise shown on 14 August 1961.

On 7 June 1961, defendant corporation made formal application to the Charlotte Building Inspection Department for ten building permits to construct ten apartment buildings containing two hundred units on the Brickell property.

On 14 June 1961, defendant Burke, in response to a direct question from Mr. Harvey White, a resident of Greentree subdivision, as to whether defendant Burke knew anything about a proposed apartment project on the Brickell property, stated that he did not know anything about it.

On 19 June 1961, the plaintiffs and other residents of the area filed a petition with the Charlotte-Mecklenburg Planning Commission requesting a change in classification of such area from a Rural District to a Residence-1 District. The petition was set for hearing on 17 July 1961, and notice of the hearing was sent to defendant corporation.

Building permits for the construction of the 200-unit apartment project were issued to defendant corporation on 26 June 1961. These permits were subsequently revoked for technical reasons and were finally reinstated on 7 July 1961.

Work on the building site consisting of surveying, clearing, grubbing, and grading had continued from 28 June, 1961, through 7 July 1961, as a building permit was not required for such site preparation work. The cost of the work done on the site during this ten-day period was $5,600.00 or 0.2% of the total proposed construction cost of $2,620,-872.00. Subsequent to 8 July 1961, construction materials were moved to the Brickell property, and the record shows that work on the project proceeded at an extraordinary rate of speed because of the impending

hearing with respect to the zoning reclassification which had been set for 17 July 1961. (Finding of Fact #76) The cost of the work done on the site during this ten-day period was $55,974.00 or 2.1% of the total contract cost. By 17 July, column footings had been poured for eight of the apartment buildings, and over half the column footings had been poured for the remaining two buildings.

On 17 July 1961, the Charlotte City Council adopted Ordinance 36-Z changing the zoning classification of a 262-acre area embracing both plaintiffs' property and the Brickell property from Rural to Residence-1, thereby prohibiting the use of the land in the area for apartment houses. Further construction on the apartment houses was halted on 18 July 1961, by a temporary restraining order issued in this action.

The court below concluded that the plaintiffs were entitled to the relief sought based on each of their three causes of action, and entered judgment that the defendants be permanently enjoined from constructing apartment buildings on the Brickell property and from extending Brookridge Lane for any purpose other than providing access to single-family residences.

From this judgment defendants appeal to Supreme Court, and assign error.

*Fleming, Robinson & Bradshaw for plaintiffs appellees.*

*Bell, Bradley, Gebhardt, DeLaney & Millette for defendants appellants.*

WINBORNE, C.J. The court below, in ordering that defendants be enjoined as specified in the judgment, concluded as a matter of law that the work done on the proposed apartment project and liabilities incurred by defendant Greentree corporation with respect thereto was not done and were not incurred in good faith, and that defendant Greentree Corporation has no vested right to construct the proposed apartment project on the Brickell property. Defendants except to these conclusions of law, thereby raising the following questions: (1) Do the facts as found by the court support the conclusion of law that defendant corporation did not act in good faith, and (2) if defendant corporation did not act in good faith, was the court correct in concluding that it has no vested right to construct the proposed project? Both questions must be answered in the affirmative.

(1) The record indicates that on 5 April 1961, the Charlotte-Mecklenburg Planning Commission presented to the Charlotte City Council a proposed zoning ordinance for the entire city of Charlotte and its perimeter area. Under this ordinance, the area in which the Brickell

property is situated is classified as Residence-15, the most restrictive residential classification under the ordinance, and one permitting basically only single-family dwellings with duplexes on corners.

The court below found as a fact that at least as early as 6 April 1961, the defendant Burke was aware of the existence of the proposed ordinance and the effect that it would have upon the Brickell property. Thereafter, with full notice, two public hearings were held concerning the proposed ordinance, and neither the defendants nor anyone else raised any objection to the ordinance.

The record indicates that as early as August, 1960, defendant Burke was aware of plaintiffs' objection to the building of apartment houses on the Brickell property, and that defendant Burke repeatedly asserted to plaintiffs and other residents of the neighborhood that he knew nothing of a proposed apartment project, and that he would do all that he could to maintain the exclusive and restricted character of the subdivision.

The record also indicates that when, on 7 July 1961, defendant corporation finally received building permits to proceed with the proposed construction on the Brickell property, there was pending before the Planning Commission a petition to change the classification of the area in question from Rural to Residence-1. Hearings had been set, and notice had been sent to defendant corporation.

The record further discloses that between 7 July 1961, and 17 July 1961, the date on which Ordinance 36-Z was adopted, defendants incurred expenditures totaling $55,974.00 for foundation work on the proposed apartment buildings.

Thus it appears that when the permits were finally issued, defendant Burke was fully aware of a community of opposition to the project and of pending legislation which, if adopted, would prevent defendants from proceeding with the project. It also appears, however, that in spite of such notice, defendants moved forward with construction at an extraordinary pace in an attempt, as admitted by defendants' counsel in brief filed in Supreme Court, to establish a right to continue the project before the area in question could be rezoned.

On these facts, it appears that the court below was justified in concluding that defendants did not act in good faith in doing the work on the project and in incurring expenditures with respect thereto.

(2) The second question raised in this appeal is this: If the defendants did not act in good faith in incurring the aforementioned expenditures, was the court below correct in concluding that defendant corporation has no vested right to construct the proposed project on the Brickell property?

Section 23-43 of Article II of the Charlotte Zoning Ordinance pro-

vides in pertinent part as follows: "No building or structure shall be erected or altered which does not comply with the building and area regulations of this article for the district wherein located, nor shall any building or premises be used for any purposes other than a use permitted by this article in the district wherein located, except as permitted in Section 23-36 of this article."

Section 23-36 provides: "The lawful use of any building or land existing at the time of the adoption of this article may be continued, but not enlarged or extended, although the use of such building or land does not conform to the regulations of the district in which such use is maintained. An existing non-conforming use of a building or premises may be changed to another non-conforming use of the same or higher classification, but may not at any time be changed to a use of a lower classification."

Defendants contend that under the above section of the zoning ordinance, they should be allowed to continue construction of the apartment project as a non-conforming use. In this connection defendants cite the following: " * * * structures in the course of construction at the time of the enactment or effective date of a zoning law are generally exempted from restrictions or prohibitions thereof. This result has been reached, even in the absence of an express exemption of buildings in the course of construction, where the zoning law provides that no building 'shall be erected' for the prohibited purpose. Indeed, there is authority to the effect that an owner of real estate who is proceeding with construction or alterations at a time when he has a right to do so acquires a vested right to proceed therewith which may not be taken away by subsequent zoning legislation * * * ." 58 Am. Jur. Zoning Sec. 149.

This statement, however, does not distinguish between cases wherein the "structure in the course of construction" were begun in good faith and without notice of an impending zoning change, and those in which, as here, the construction was begun with full knowledge of an impending zoning change and the expenses were incurred in an attempt to establish a right to continue before the impending change should become effective.

From a perusal of the cases in North Carolina, it appears that there is no direct authority for the proposition that to establish a vested right to continue construction in such a case as this, the defendants must have acted in good faith in proceeding to incur expenditures in reliance upon a valid building permit. However, an indication that such a rule would be proper is found in *In Re Appeal of Supply Co.*, 202 N.C. 496, 163 S.E. 462. This case involved a zoning ordinance of the city of Goldsboro and a determination of when "con-

struction * * * shall have been started" within the meaning of the ordinance. *Brogden, J.*, speaking for the Court, stated: "So, in the present case, if the plaintiffs, in good faith, and in pursuance of a permit granted from the City of Goldsboro, had placed filling station equipment and supplies upon the premises with the intention of operating such station in full conformity with authority previously granted, then it cannot be said, as a matter of law, that construction had not started before the expiration of the time limit."

Furthermore, cases in other jurisdictions which have dealt with similar or related problems indicate that the rule requiring reliance in good faith upon a valid building permit would apply to such a case as this. In *Winn v. Lamoy Realty Corp.*, 100 N.H. 280, 124 A. 2d 211, the New Hampshire Court states: "It appears upon analysis of their facts that a majority of these cases allow relief to the landowner only when he has incurred substantial expenditures or legal obligations relying in good faith upon the permit."

In *Pelham View Apts. v. Switzer*, 130 N.Y. Misc. 545, 224 N.Y.S. 56, the New York Court stated: "When a permit to build a building has been acted upon, and where the owner has, as in this instance, proceeded to incur obligations, and, in good faith, to erect the building, such rights are then vested property rights, protected by the federal and state constitutions. * * * This case must be distinguished from the many other cases where the permits were not obtained in good faith, but merely in anticipation of an amendment to the zoning law."

In *Glenel Realty Corp. v. Worthington*, 4 N. Y. App. Div. 702, 164 N.Y.S. 2d 635, the New York Court stated: "It is well settled that one who, in reliance upon a permit validly issued by a municipality, in good faith makes substantial improvements and incurs substantial expense in order to make his land suitable for a specific purpose or use, acquires a vested right to such use even though by reason of such subsequent changes in the zoning ordinance such use has become a prohibited or non-conforming use. (*Riverdale Community Planning Assn. v. Crinnion, Sup.*, 133 N.Y.S. 2d 706, affirmed 285 App. Div. 1047, 141 N.Y.S. 2d 510, appeal dismissed, 1 N.Y. 2d 689, 150 N.Y.S. 2d 616; *Herskovitz v. Irwin*, 299 Pa. 155, 149 A. 195; *City of Buffalo v. Chandeayne*, 134 N.Y. 163, 165-166, 31 N.E. 443, 444; *People ex rel Ortenberg v. Bales*, 224 App. Div. 87, 229 N.Y.S. 550, affirmed 250 N.Y. 598, 166 N.E. 339; *Caponi v. Walsh*, 228 App. Div. 86, 89, 238 N.Y.S. 438, 441; *Pelham View Apts. v. Switzer*, 130 Misc. 545, 224 N.Y.S. 56)."

In *Graham Corp. v. Board of Zoning Appeals*, 140 Conn. 1, 97 A. 2d 564, the plaintiff builder acquired property in an area subject to a zoning classification permitting the erection of multi-family dwellings but requiring a special authorization to construct any dwelling to house

more than eight families. On 27 October 1951, after several technical delays, a permit to build a 195-unit dwelling was issued to plaintiff, and the land was excavated, and concrete footings were poured. On 29 October, adjoining landowners appealed the issuing of the permit, and the action of the building inspector in issuing the permit was upheld on 14 November 1951. On 7 November, however, the town planning commission had amended the zoning regulations, effective 14 November, and, as amended, the regulations prohibited the construction of structures to house more than forty families in the area in question.

In concluding that the plaintiff had not acquired a vested right to continue construction, the Connecticut Supreme Court stated: "In other words, the case under consideration does not present a situation where the plaintiff was unaware of any hostility to its program on the part of the nearby residents of the town. Everything, of course, points unmistakably to the contrary. When, then, the foundation permit was issued under date of 27 October, the plaintiff doubtless expected, in view of its past experience, that the opposition would seek a review of the inspector's action. Such, indeed, proved to be the fact when the adjacent landowners, upon learning of the issuance of the permit, took an appeal to the board on October 29th, thereby staying all further construction activities on the plaintiff's part.

"The record does not establish just what work had been done prior to October 27th but anything which the plaintiff accomplished on Saturday and Sunday, October 27th and 28th, in excavating on the land with the use of power shovels and in pouring concrete footings did not bring the building to the point where it was 'substantially in course of construction', as mentioned in the rule. Nor does the hurried incurring of expenditures on the two days mentioned commend itself to any equitable consideration. The difficulty in which the plaintiff finds itself in this matter of expense was one of its own deliberate choice."

Thus, since the court below found facts sufficient to justify its conclusion that defendant Greentree Corporation did not act in good faith in proceeding to incur the aforementioned expenditures, we concur with the conclusion of the court that defendant corporation has no vested right to construct the proposed apartment project on the Brickell property.

Hence, the judgment of the court below is
Affirmed.

BOBBITT, J., concurs in result.

HIGGINS, J., dissents.