FREDERICK WARNER AND WIFE, ELIZABETH L. WARNER; JOHN XENAKIS AND WIFE, GEORGIA XENAKIS; WILLIAM H. HAGGARD AND WIFE, BLANCHE HAGGARD v. W & O INCORPORATED AND FREDERICK STEINER.

(Filed 25 November, 1964.)

**1. Appeal and Error § 22—**

Legal conclusions of the trial court, even though denominated findings of fact, are not conclusive, and upon appeal the Supreme Court will examine all the findings of fact to ascertain if they support the judgment.

**2. Judgments § 30—**

Where a municipal board of adjustment refuses to revoke a building permit on the ground that the contemplated structure was prohibited by existing ordinances, judgment upon *certiorari* sustaining the order does not adjudicate the right of the municipality to thereafter prohibit the proposed structure by amending its zoning ordinances.

**3. Municipal Corporations § 25—**

If a property owner in good faith makes expenditures in reliance on a building permit issued to him, his right to construct the building will be protected as an existing use upon later amendment of the municipal zoning regulations, but the mere issuance of a building permit alone creates no property right in him, and he may not remain inactive and thereby deny the municipality the right to make needed changes in its ordinances.

**4. Same—**

Expenditures for architect's drawings prior to the issuance of a building permit cannot be made in reliance on the permit so as to protect the permittee from later changes in the zoning ordinances.

**5. Same—**

The felling of trees encroaching on the site of a proposed structure for which a building permit had been issued does not involve such an expenditure as will protect the permittee against a subsequent amendment to the zoning ordinances of the city, certainly when the trees are felled after the enactment and only shortly before the effective date of the amendment.

**6. Frauds, Statute of, § 6b—**

Parol acceptance by the optionee is not sufficient to repeal the statute of frauds so as to bind the optionee.

**7. Municipal Corporations § 25—**

Where, at the time of the enactment of an amendment prohibiting a proposed structure, the optionee who had obtained a building permit could not have been compelled to purchase and pay for the property by reason of the statute of frauds, the optionee may not assert the later payment of the purchase price as an expenditure in good faith exempting him from the operation of the amendment.

**8. Same—**

The law accords protection to nonconforming users who, relying on authorization then given, make substantial expenditures in the honest belief that proposed structures would not violate the zoning regulations, but the law does not protect one who waits until after the enactment of an ordinance forbidding a proposed use before making expenditures even though the expenditures are made prior to the effective date of the ordinance.

APPEAL by plaintiffs from *Froneberger, J.,* January 27, 1964, Civil Session of BUNCOMBE.

This action was begun December 5, 1962. Plaintiffs own lots in Reynolds Place, a residential area restricted to single family residences. They seek to enjoin the construction by W & O, Incorporated (W & O), of a 50 family apartment house on a lot adjoining Reynolds Place. The right to injunctive relief is based on the assertion that the proposed construction would violate the zoning ordinances of Asheville.

A temporary restraining order issued. This was continued to the hearing. A jury trial was waived. Most of the facts were stipulated. The determinative facts as stipulated, or as found by the court, are these: Defendant Steiner is the agent of W & O. On May 7, 1962, Johniet R. Scott, a widow, and Bessie Love Humphreys owned the lot on which W & O proposes to construct the apartment house. Francis Humphreys, husband of Bessie, was mentally incompetent and confined to a mental institution. On May 7, 1962, a written option was given to Steiner, as agent for Albert Owens. (The record is barren of anything to indicate how W & O acquired the rights of Owens under the option.) Within the option period, optionees gave verbal notice of their election to exercise the option. On August 6, 1962, a special pro-

ceeding was instituted so that a valid conveyance of the property might be made without the joinder of the incompetent husband of Bessie R. Humphreys. On August 8, 1962, Steiner applied to the building inspector for a permit for the construction of a building on the lot in question. The application lists W & O as the owner of the lot. Attached to the application were detailed plans and specifications. Permission to construct the proposed building was granted by the building inspector on August 8, 1962. The property was then zoned RA-8. The zoning ordinance did not prohibit the construction of apartment buildings in areas so zoned. On August 9, 1962, plaintiffs and other interested property owners filed a petition with the governing authorities of Asheville requesting that the area be rezoned and placed in zone RA-10, which classification prohibits the erection of multiple family dwellings.

On September 13, 1962, the City Council, acting upon the recommendation of the Planning and Zoning Commission, rezoned the area and placed the lot in question in class RA-10. This ordinance became effective on September 28, 1962. On the date the ordinance became effective no construction work had been done, except for soil borings and felling six or seven trees. W & O had, however, after it gave verbal notice of its election to purchase, but prior to its application for a permit, expended moneys in securing a commitment from a financial institution to provide funds for the construction of an apartment house. It had also made expenditures for the preparation of plans for the apartment house.

Petitioners sought to have the Board of Adjustment revoke the permit issued on August 8, 1962. On September 10, 1962, the Board of Adjustment refused to revoke the permit. On September 18, 1962, plaintiffs Warner filed a petition for *certiorari* to review the action of the Board of Adjustment. As a basis for their assertion that the permit was invalid, they alleged: "The proposed construction is not an apartment house or multiple-dwelling as permitted by RA-8 Regulations, the same not being designed for permanent residency, but is actually a motel or efficiency motel for use by transient or seasonal occupancy, in violation of said Zoning Ordinance." The writ of *certiorari* issued September 19, 1962. On September 27, 1962, a temporary restraining order issued enjoining construction of the building pending determination of the questions raised in the application for *certiorari*. The deeds conveying the property to W & O were executed and delivered on September 26, 1962, and on October 9, 1962.

In addition to the facts summarized above, the court found: "[T]he Building Permit was duly and properly issued on August 8, 1962, and the defendants acquired thereby a vested interest to erect the build-

ings authorized by said permit. That the action of the Asheville City Council in rezoning the Lake Shore area as RA-10 did not affect the permit theretofore issued to the defendant W & O., Inc., and that said permit is subject to recall or revocation only by action of the Building Inspector of the City of Asheville. * * * The Building Permit has been judicially determined to have been properly issued by final judgment entered by Judge Harry C. Martin on November 30, 1962." Based on the findings and stipulations, the court concluded that the restraining order theretofore issued was improvidently granted. It dissolved the restraining order and authorized defendants to proceed with the construction of the building. It retained the cause so that damages sustained by defendants by the issuance and continuance of the restraining order might be determined. Plaintiffs excepted to the findings and judgment and appealed.

*James S. Howell and Harold K. Bennett for appellants.*
*John S. Stevens and William M. Styles for appellees.*

RODMAN, J. The quoted findings listed by the court as facts are, in reality, legal conclusions determinative of the rights of the parties. Plaintiffs' exceptions to the findings and their assignments of error necessitate an examination of the facts, those stipulated and found by the court, to ascertain if the quoted conclusions are correct. The listing of what is in reality a legal conclusion as a fact, when contrary to the facts stipulated and not supported by the evidence, has no efficacy.

The finding that the validity of the permit to build had been judicially determined by judgment entered by Judge Martin, on November 30, 1962, finds no support in the record. No judgment bearing that date appears in the record. The parties, in their briefs, indicate that the judgment to which the finding relates is the judgment entered in the proceedings initiated by plaintiffs Warner to review by *certiorari* the Board of Adjustment's refusal, on September 10, 1962, to vacate the permit issued August 8, 1962. For the purpose of this opinion, we act upon the assumption that Judge Martin, when called upon to review the action of the Board of Adjustment, concluded that the reason then assigned for reversing the Board of Adjustment did not show invalidity on September 10, the date the Review Board acted. The reason then assigned for reversing the action of the Board of Adjustment was that the permit was invalid because the proposed building violated the provisions of the ordinance relating to properties classified in zone RA-8. The Board of Adjustment was not called upon to rule on the right of W & O to obtain a building permit because it was not a property

owner, or its right to act on the permit after the ordinance was amended. A judgment rendered in the proceedings for *certiorari* is not determinative of the questions presented in this action.

The parties have not seen fit to incorporate in the record the zoning ordinance. There is nothing in the evidence to show what the ordinances provide with respect to the right of an optionee to apply for a permit for the construction of a building. Our statute, G.S. 160-126, requires the owner of the property to obtain a permit before constructing or repairing a building. But there is nothing in this case which requires us to determine whether the word "owner," as there used, would exclude a lessee, or one having an option, to purchase. For present purposes, we assume that an optionee is within the class that might apply for, and obtain, a building permit.

Accepting as correct defendants' contention that the permit was valid on August 8, 1962, when issued, we are brought to the crucial question: Did that permit create a vested right denying to the city the power to amend its ordinances by enlarging the area of zone RA-10?

The permit created no vested right; it merely authorized permittee to act. If he, at a time when it was lawful, exercised the privilege granted him, he thereby acquired a property right which would be protected; but he could not remain inactive and thereby deny to the municipality the right to make needed changes in its ordinances. It is not necessary for the permittee to show that the construction authorized by the permit has been completed before the ordinance is amended. He is protected if, acting in good faith, he has made expenditures on the faith of the permit at a time when the act was lawful. *Stowe v. Burke*, 255 N.C. 527, 122 S.E. 2d 374; *In Re Appeal of Supply Co.*, 202 N.C. 496, 163 S.E. 462; 101 C.J.S. 1006-7, 58 Am. Jur. 1041.

Expenditures made for architect's drawings, so that W & O might apply for a permit, were manifestly not made in reliance on the permit thereafter issued. The parties stipulated: "That on the date of September 13, 1962, the date that Ordinance 462 was adopted rezoning subject property, and on the date of September 28, 1962, the effective date of said rezoning ordinance, no construction work had been done on subject property; except for certain clearing and grubbing operations." This stipulation must be interpreted in the light of the testimony of defendants' witness, Steiner, the only witness to testify with respect to the work. He testified he engaged "a tree man to eliminate the trees on the property that would encroach upon the building site, which consists of approximately six to seven trees that we had eliminated. * * * I would say he dropped the trees, and at the time that the trees were dropped and had fallen on the ground he was stopped from doing any

further work." The record shows the work was stopped by a restraining order issued and served on September 27, 1962. Nowhere is there any estimate of the cost of doing this work. The evidence discloses that the expenditures could not have cost any substantial sum. They were made at a time when the permittee knew that the city had adopted an ordinance prohibiting the construction of apartment buildings in the area. It appears from Steiner's testimony that this work was done on September 27, just one day before the amended ordinance became effective. Steiner, the agent for W & O and in charge of its operations, was aware of the opposition to the construction of the apartment house, the effort to revoke the permit, and the application of protesting citizens to the City Council for an amendment of the ordinance.

The court found as a fact that defendants "obligated themselves for the purchase price of the land in complete good faith, and without notice or knowledge of any opposition to the erection of the proposed buildings." Plaintiffs excepted to and assigned the foregoing finding as error, because the parties had expressly stipulated there was no written notice of the election to purchase; notice of the election to purchase was given verbally in May, 1962; and the deeds executed pursuant to the notice were dated September 26, 1962, and October 9, 1962.

No contract to buy or sell land can be enforced unless in writing and signed by the party to be charged, G.S. 22-2. A written option offering to sell, at the election of the optionee, can become binding on the owner by verbal notice to the owner, *Kottler v. Martin,* 241 N.C. 369, 85 S.E. 2d 314; but a parol acceptance by the optionee is not sufficient to repel the statute of frauds and bind the optionee. *Burriss v. Starr,* 165 N.C. 657, 81 S.E. 929; *Hall v. Misenheimer,* 137 N.C. 183, 49 S.E. 104; *Love v. Atkinson,* 131 N.C. 544, 42 S.E. 966; *Improvement Co. v. Guthrie,* 116 N.C. 381, 21 S.E. 952; *Love v. Welch,* 97 N.C. 200, 2 S.E. 242; *Mizell v. Burnett,* 49 N.C. 249; *Carr v. Rawlings,* 123 S.E. 875; *Imholz v. Southern Oil Corporation of America,* 134 S.W. 2d 301; James, Option Contracts, pp. 187-189, Ann. Cas. 1913A 1042; 30 A.L.R. 2d 974; 49 Am. Jur. 691; 37 C.J.S. 664. It follows as a matter of law from the stipulated facts that W & O could not have been compelled to purchase and pay for the property because of their verbal acceptance. The ordinance had been amended before the deeds were executed; it became effective only two days after the first deed was dated, and was in effect prior to the date of the second deed.

The fact that plaintiffs obtained a restraining order on September 27, 1962, forbidding defendants from proceeding with the construction of the proposed building, did not enlarge their rights. They knew that

the ordinance prohibiting the construction would become effective the following day. The law accords protection to nonconforming users who, relying on the authorization given them, have made substantial expenditures in an honest belief that the project would not violate declared public policy. It does not protect one who makes expenditures with knowledge that the expenditures are made for a purpose declared unlawful by duly enacted ordinance. *Lee v. Board of Adjustment,* 226 N.C. 107, 37 S.E. 2d 128, 168 A.L.R. 1; nor does it protect one who waits until after an ordinance has been enacted forbidding the proposed use and, after the enactment, hastens to thwart the legislative act by making expenditures a few hours prior to the effective date of the ordinance, *Stowe v. Burke, supra.*

Reversed.