TOWN OF HILLSBOROUGH, A MUNICIPAL CORPORATION v. CLARENCE DUPREE SMITH AND WIFE, MAE L. SMITH
No. 6915SC95

(Filed 30 April 1969)

1. **Municipal Corporations § 30— action to restrain noncompliance with zoning ordinance — defense of landowner**

    In municipality's action to restrain landowners from continuing construction work on their land until they obtain a zoning permit therefor in compliance with zoning ordinance, landowners may assert as an affirmative defense that they in good faith and without notice of the pending adoption of the ordinance incurred substantial expense in reliance upon a building permit issued to them by the municipality prior to the adoption of the ordinance.

2. **Municipal Corporations § 30; Administrative Law § 2— action to restrain noncompliance with zoning ordinance — exhaustion of administrative remedies**

    In municipality's action to restrain landowners from continuing construction work on their land until they obtain a zoning permit therefor in compliance with a zoning ordinance, landowners, who asserted as an affirmative defense their reliance upon a building permit issued by the municipality prior to the enactment of the ordinance, are not required to exhaust their administrative remedies by applying for a zoning permit in order to challenge the ineffectiveness of the ordinance, since to compel landowners to seek relief under the ordinance would be a patently useless step, increase cost and promote multiplicity of actions.

3. **Municipal Corporations § 30; Administrative Law § 2— challenge to validity of zoning ordinance — exhaustion of administrative remedies**

    The exhaustion of administrative remedies is not a prerequisite to the

raising of a defense of the invalidity of a zoning ordinance as it applies to certain property.

**4. Municipal Corporations § 30—— issuance of building permit —— rights of landowners —— effect of subsequently enacted ordinance**

The mere issuance of a building permit vests no rights in the permittee against a subsequently enacted ordinance prohibiting the intended use, but the issuance of a permit coupled with a substantial change of position by the permittee in reliance thereon, acting in good faith, vests the right to complete the construction.

**5. Municipal Corporations § 30—— zoning ordinance —— completion of nonconforming use —— landowner's good faith and expenses —— nature of expenses**

In order for landowners to complete construction of a nonconforming use prohibited by a zoning ordinance enacted after the issuance of a building permit, the landowners must show that they in good faith made substantial expenditures in reliance upon the building permit prior to the enactment of the ordinance, but the expenditures need not be limited to the land itself.

**6. Municipal Ordinances § 30—— action to restrain noncompliance with zoning ordinance —— instruction on defenses**

On issue as to whether landowners made substantial expenditures in reliance upon building permit so as to allow them to complete construction of nonconforming use prohibited by zoning ordinance enacted after issuance of the permit, instructions which permitted jury to consider all expenditures made in good faith from date of issuance of the permit to date landowners received notice of revocation of the permit, rather than expenditures made from issuance of permit to effective date of ordinance, *is held* erroneous.

APPEAL by plaintiff from *Hall, J.,* September 1968 Civil Session, Superior Court of ORANGE.

On 11 July 1968, the Town of Hillsborough brought an action against defendants alleging the adoption on 27 May 1968 of a zoning ordinance, copy of which was attached to the complaint; that the ordinance prohibited excavation or land preparation until a zoning permit had been issued; that defendants had begun excavation and land preparation on their lot described in the complaint without first obtaining a zoning permit. The town asked that defendants be permanently restrained and enjoined from excavating or otherwise preparing their lot described in the complaint for any nonfarm use, or from erecting any building, buildings or any structure thereon without first obtaining a zoning permit therefor. Temporary restraining order was entered 11 July 1968, and amended on 31 July 1968, to permit defendants to landscape the property in question. Defendants answered averring that the town had issued

to them on 3 May 1968 a building permit, copy of which was attached to the answer, and that in reliance thereon and in good faith, they had "expended huge sums of money and incurred substantial obligations in proceeding with the construction, excavation, purchase and improvement of said land and in purchasing equipment, and other items of labor and material, to enable the defendants to use the said tract of land as a commercial business enterprise." They further averred that at no time from the issuance of the permit until 11 June 1968 did they know that their intended use of the land was proscribed by the ordinance; that at the time of the issuance of the permit, and at the times the substantial expenditures were made and the obligations incurred in good faith, in reliance on the building permit, the use intended by them was a lawful use of the land. They asked that the temporary restraining order be dissolved, that they be permitted to proceed with the contemplated use of the land as authorized by the building permit.

Upon trial, the issue submitted: "Did the defendants in good faith and without notice of the pending zoning ordinance prohibiting the use of their property for business purposes, incur substantial expenses in reliance upon the building permit issued to them on May 3, 1968?" was answered in favor of defendants, and judgment was entered thereon vacating the restraining order. Plaintiff appealed.

*Graham & Cheshire by Lucius M. Cheshire for plaintiff appellant.*

*Alonzo Brown Coleman, Jr., for defendant appellees.*

Morris, J.

Plaintiff assigns as error the refusal of the trial court to grant plaintiff's motion for judgment as a matter of law for that plaintiff's only prayer is that defendants not be allowed to continue the land preparation without obtaining a zoning permit. It is stipulated that defendants have not applied for a zoning permit. Plaintiff contends that defendants have, therefore, not exhausted their administrative remedies. Plaintiff also assigns as error the court's denial of its motion for a directed verdict on defendants' affirmative defense for that defendants failed to introduce evidence of any work done on the land itself prior to the enactment of the ordinance and failed to introduce evidence of expense incurred prior to the date defendants had constructive notice of the zoning ordinance by virtue of publication of notice of public hearing. Request for peremptory instructions to that effect was refused, and plaintiff excepted. Plain-

tiff tendered the following issue, which was refused and plaintiff excepted: "Have the defendants in good faith and without notice of the pending zoning ordinance incurred substantial expenses in making improvements to the property of the defendants?" Plaintiff also assigns as error portions of the judge's charge for that the charge did not limit expenditures merely to the land itself and for that the court failed to charge the jury that defendants were not justified in making expenditures in reliance on a building permit after notice of a pending ordinance had been published.

The questions raised by plaintiff's assignments of error are threefold. May defendants in this action assert the defense of reliance on the building permit or are they required to apply for a zoning permit? If the defense may be asserted, are they limited to expenditures and work on the land itself? And must these expenditures and work be made and done prior to publication of notice of public hearing?

Plaintiff relies on *Garner v. Weston,* 263 N.C. 487, 139 S.E. 2d 642, as authority for its contention that defendants must exhaust administrative remedies and cannot assert the defense of reliance on a building permit. We do not agree that *Garner v. Weston* is authority for this position. There the landowners had acquired property and were in the process of constructing a trailer park within one mile of the town limits of Garner. The town adopted an extraterritorial zoning ordinance effective 15 April 1963. In August 1963 Garner brought suit to enjoin defendants from constructing the trailer park. Defendants answered contending that they had a vested right in completing the project as a nonconforming use by reason of their having made plans, expended considerable sums of money in grading streets, digging a well, building a pump house, laying waterlines, concrete patios, and buying trailers. Jury trial was waived by the parties. The court heard the evidence and found facts which were contrary to most of defendants' evidence. Nevertheless, defendants in their brief stated there was no dispute about the facts found. The facts found included a finding that health regulations required the obtaining of a permit before construction could begin and that defendants did not have one. The court further found that the ordinance empowered the board of adjustment to issue a variance permit upon proper showing and defendants did not apply for such a permit. The court found the defendants had not shown any valid defense to plaintiff's action. On appeal, the Supreme Court noted that since there was no dispute about the facts found, it was bound by them; that they were sufficient to support the conclusions, which, in turn sustained the judgment. The Court noted, however, "The court

found the zoning ordinance of the Town of Garner made provision for a hearing before the Board of Adjustment upon application for a permit to complete a nonconforming use, but the defendants have not applied for such permit and hence have not exhausted their administrative remedies. (citations omitted.) The defendants' showing, in view of their stipulations, is not sufficient to permit reversal of the judgment. However, in view of the expenses incurred, the defendants, if so advised, may make application for a nonconforming use permit as a hardship case. Such permit, however, is discretionary with the Board of Adjustment."

**[1, 2]** We do not construe the case as requiring the landowner to apply for a zoning permit under an ordinance which he contends is ineffective in its application to him by reason of vested rights he contends he has acquired which make the ordinance ineffective to the land use complained of as in contravention to the ordinance. In the *Garner* case the landowner had not been issued a building permit by the municipality.

We are of the opinion that the affirmative defense raised by defendants is permissible. If defendants, acting in good faith and in reliance on the building permit, had acquired a vested right to use their property for commercial purposes, they are not required to apply for a zoning permit as provided by the ordinance. Indeed, to require this procedure would be a vain thing under the terms of the ordinance. The ordinance provides that "all buildings and other structures upon which substantial construction was begun prior to adoption of this ordinance or amendment to it, and which do not conform to the requirement of said ordinance or amendment shall be classified as non-conforming buildings or structures. No other beginnings of buildings or structures or uses of land which do not conform to the provisions of this ordinance shall entitle said buildings or structures or uses of land to non-conforming status under the provisions of this ordinance." § 11.1, Hillsborough North Carolina Zoning Ordinance. The ordinance further requires application for zoning permit to be made to the Hillsborough Zoning Officer and by § 12.2 provides: "The Zoning Officer is hereby authorized and it shall be his duty to enforce the provisions of this ordinance *exactly* as written. The Zoning Officer shall have no powers of interpretation or for the granting of exceptions or variances. In any case of doubt as to the legality of a request for a Zoning Permit the Zoning Officer shall refer the request to the Board of Adjustment. Appeal from decisions of the Zoning Officer may be made to the Board of Adjustment."

**[3]**   To compel defendants to seek relief under the provisions of the ordinance would be a patently useless step, increase costs and promote multiplicity of actions. The exhaustion of administrative remedies is not a prerequisite to the raising of a defense of the invalidity of the zoning ordinance as it applies to a certain property. *County of Lake v. MacNeal,* 24 Ill. 2d 253, 181 N.E. 2d 85.

We now address ourselves to the remaining question raised by plaintiff's assignments of error.

**[4]**   Certainly the mere issuance of a building permit vests no rights in the permittee against a subsequently enacted ordinance prohibiting the intended use. 8 McQuillin, Municipal Corporations, (3d ed. 1965) § 25.155, p. 492. But our Court has recognized the principle that the issuance of a permit coupled with a substantial change of position by the permittee in reliance thereon, acting in good faith, vests the right to complete the construction. The principle is stated in *Warner v. W & O, Inc.,* 263 N.C. 37, 138 S.E. 2d 782, as follows:

> "The permit created no vested right; it merely authorized permittee to act. If he, at a time when it was lawful, exercised the privilege granted him, he thereby acquired a property right which would be protected; but he could not remain inactive and thereby deny to the municipality the right to make needed changes in its ordinances. It is not necessary for the permittee to show that the construction authorized by the permit has been completed before the ordinance is amended. He is protected if, acting in good faith, he has made expenditures on the faith of the permit at a time when the act was lawful. *Stowe v. Burke,* 255 N.C. 527, 122 S.E. 2d 374; *In Re Appeal of Supply Co.,* 202 N.C. 496, 163 S.E. 462; 101 C.J.S., 1006-7, 58 Am. Jur. 1041."

In *Stowe v. Burke,* 255 N.C. 527, 122 S.E. 2d 374, the defendants received a permit from the city to construct apartment houses on 7 July 1961 and on 17 July 1961 the city passed a zoning ordinance prohibiting the use of the defendants' property for apartment purposes. During this 10-day period the defendants spent some $55,000 for foundation work on the property. The Court held, for the first time in North Carolina, that in order for a party to acquire a vested right to complete construction of a nonconforming use, expenditures made prior to the enactment of the zoning ordinance must have been made in good faith. Evidence showed that the defendants were aware of a "community of opposition" to the construction of apartments on the property, and that they had received a copy of the proposed

ordinance. Thus, the Court upheld the trial court's conclusion that the defendants had not acted in good faith and therefore acquired no vested right to construct the proposed apartment project on the property. (The case was tried without a jury.) In the case at bar, the evidence on the question of good faith is in substantial conflict.

**[5]** Plaintiff contends that the test must be whether actual construction has begun or whether the land was physically used for the contemplated construction, and not expenditures made other than on the land itself in preparation to build. This view finds support in some jurisdictions. *Kiges v. St. Paul,* 240 Minn. 522, 62 N.W. 2d 363. While there is certainly no easy formula available to resolve issues of this kind, we believe that fairness to both the public and the individual property owner is better served by a more flexible rule. The majority of jurisdictions do not require that the substantial expenditures be made to the land itself. *Tremarco Corp. v. Garzio,* 161 A. 2d 241 (N.J.) ; *Clairmont Development Co. v. Morgan,* 149 S.E. 2d 489 (Ga.) ; 8 McQuillan, Municipal Corporations, § 25.157 and cases there cited; 101 C.J.S., Zoning, § 243 and cases there cited. "Obviously, where a use under a permit has been undertaken, with investment of capital, the purchase of equipment, employment of workers or the like, the protection of that permit is then close if not tantamount to the protection of a nonconforming use existing at the time that zoning restrictions become effective; . . ." McQuillin, Municipal Corporations, *supra.*

Our Court in *In Re Tadlock,* 261 N.C. 120, 134 S.E. 2d 177, said that the mere planning of a development is insufficient to enlarge a nonconforming use. Although the precise questions raised here have not been before the North Carolina Supreme Court, a brief review of a few cases would indicate that expenditures should not necessarily be limited to the land itself, but must be made or incurred in good faith and prior to the effective date of the ordinance.

In *In Re Appeal of Supply Co.,* 202 N.C. 496, 163 S.E. 462, plaintiffs had obtained a permit from the city of Goldsboro to operate a filling station. Approximately seven months later the city adopted a zoning ordinance which prohibited the operation of plaintiffs' proposed station, except that the ordinance provided as follows:

"Nothing herein contained shall require any change in the plans, construction, size or designated use of any building, structure or part thereof for which a building permit has been granted by the building inspector before this ordinance becomes effective and the construction of which from such plans shall have been

started within 90 days after this ordinance becomes effective,
. . ."

Three days before the expiration of the 90-day period the plaintiffs placed a grease dispenser and goods to be sold out of a filling station upon the premises. The Court held that it was a question for the jury as to whether, under the circumstances, the plaintiffs were precluded from installing the gas pumps in accordance with the permit issued them by the city.

In the *Tadlock* case, *supra*, the property owner had planned to build a trailer park in three stages. However, he had only worked on one section at the time of the enactment of the ordinance. The Court held that "by planning the development in three stages and confining actual construction to Area 1 only, the applicants as to Areas 2 and 3 fall within the rule that planning a development alone is insufficient to enlarge a nonconforming use." From the Court's discussion it would appear that little or no funds had been spent on Areas 2 and 3 at the time the ordinance was enacted.

In *Warner v. W & O, Inc., supra,* the property owner obtained a permit to construct apartment houses on certain property for which they held an option. The action was brought by adjoining landowners in December 1962 to enjoin defendants from continuing construction on the ground that the proposed use would violate the zoning ordinance. The permit was granted on 8 August 1962 and on 13 September 1962 the city amended the zoning ordinance prohibiting plaintiff's proposed structure. The amendment was to become effective on 28 September 1962. In discussing expenditures made prior to the effective date of the amendment, the Court does not state that a vested interest may be acquired only by making improvements to the land. The Court states, "It is not necessary for the permittee to show that the construction authorized by the permit has been completed before the ordinance is amended. He is protected if, acting in good faith, he has made expenditures on the faith of the permit at a time when the act was lawful." Also, "The law accords protection to nonconforming users who, relying on the authorization given them, have made *substantial expenditures* in an honest belief that the project would not violate declared public policy. It does not protect one who makes expenditures with knowledge that the expenditures are made for a purpose declared unlawful by duly enacted ordinance." (Emphasis added.) The Court discusses each of the expenditures made by the landowner and concludes that they were not such expenditures as would give him a vested right. Expenditures for architect's drawings were made prior

to receiving the permit. Therefore, they were not made in reliance on the permit. The cost of removing six or seven trees from the property would not have been substantial. The parties had purchased property in reliance on the permit. However, this was done after the ordinance was amended, and the court found that there was no binding contract to purchase the property prior to the amendment. The Court does not say that expenditures, in order to create a vested interest in a nonconforming use, must have been made for improvements to the land.

The testimony as to the good faith of defendant's was sharply in conflict. Evidence was admitted, without objection, as to all expenditures made and obligations incurred by defendants after the issuance of the permit both before and after the effective date of the ordinance. This evidence was recapitulated by the trial court in its charge. The court correctly instructed the jury that the permit created no vested rights in the defendants, that it merely authorized the defendants to act and if they exercised the privilege granted by the building permit at a time when it was lawful, a property right would be acquired, would be protected, and further that it is not necessary that the proposed construction be completed prior to the adoption of the zoning ordinance.

**[6]** However, the court also charged as follows: "If the defendants acted in good faith and made substantial expenditures in reliance on the permit, but without notice of the pending ordinance prohibiting the use of the property for business purposes, the defendant would be protected, that is, if the defendant made substantial expenditures in the honest belief that the proposed construction would not violate the zoning regulations, the defendant would be protected and would be entitled to complete their proposed building, as a non-conforming use." Plaintiff assigns this portion of the charge as error. We are constrained to agree. We are of the opinion that the court did not sufficiently explain and declare the law applicable. The jury could have believed that they were free to consider all expenditures made in good faith from the issuance of the permit to June 11, the date defendants received notice of the revocation of the building permit, rather than those made in good faith after the issuance of the permit and before 27 May, the date of enactment and effective date of the ordinance. The possibility that the jurors might have been misled is accentuated by the fact that evidence of all ex-

penditures and obligations incurred was before them without objection and had been recapitulated by the court.

Since there must be a new trial, we do not discuss the evidence.

New trial.

· CAMPBELL and BRITT, JJ., concur.