In Re Appeal of M. R. TADLOCK and wife, LURA S. TADLOCK, from the Zoning Board of Adjustment for the Charlotte Area.

(Filed 17 January 1964.)

1. **Municipal Corporations § 25—**

Where the facts are not in dispute, whether the activities of the owner amount to a completion of a project started before the enactment of the zoning ordinance or amount to an enlargement of a nonconforming use, is a question of law.

2. **Same— Landowner is entitled as a matter of law to complete project already begun at the time of the enactment of ordinance.**

The uncontradicted evidence was to the effect that petitioners were engaged in developing their land into a trailer-park, having divided it into three areas, and that at the time of the enactment of the ordinance in question had actually completed construction of fourteen units and were proceeding to construct the eleven other units of the first area when the building inspector gave notice to stop construction and to remove four units constructed subsequent to the passage of the ordinance. *Held:* Petitioners are entitled as a matter of law to complete the construction of

the units on the first area, but, since the matter had not progressed beyond the planning stages as to the other two areas, the construction of units on them would amount to an enlargement of a nonconforming use within the prohibition of the ordinance, unless allowed as a matter of discretion as a hardship case.

Appeal by M. R. Tadlock and wife, Lura S. Tadlock, from *Copeland, S.J.*, February 4, 1963, Special "B" Civil Session, Mecklenburg Superior Court.

This controversy grew out of the following:

"ORDER OF ZONING INSPECTOR, City of Charlotte, North Carolina, August 16, 1962.

"Mr. Ralph Tadlock, Route 7, Box 474, Charlotte, North Carolina. Dear Mr. Tadlock: An inspection of the property on Perkins Road, located in a R-12 District as established by the Charlotte Zoning Ordinance has revealed a mobile home court. The ordinance specifically prohibits this type of use in this District. It is the duty of this Department to enforce the provisions of the Ordinance. All units that have been established after January 29, 1962 will have to be removed. This letter is, therefore, official notice to move non-conforming units within (15) days from the date of this letter. Your prompt cooperation will make further action by this Department unnecessary. Yours truly, /s/ D. W. Long, Zoning Inspector."

"NOTICE OF APPEAL.

"Notice is hereby given the Board of Adjustment and the Building Inspector relative to an appeal from the ruling of the Building Inspector on the 10th day of September 1962, for ten acres of land in Mallard Creek Township lying on the westerly side of Perkins Road located at: in the City of Charlotte, North Carolina, (Perimeter area). Title to this property is in the name of M. R. Tadlock and wife, Lura S. Tadlock. The grounds for this appeal are as hereinafter set forth:

"The appellants allege and contend that prior to January 30, 1962, they had begun the development of a trailer park on the above described ten acre tract; that said trailer park was in the process of completion on January 30, 1962, and that they have the right to complete the development thus started.

"Signature of Appellants: Lura S. Tadlock, M. R. Tadlock."

The Board of Adjustment held a hearing on November 27, 1962, at which Mr. and Mrs. Tadlock offered evidence of which this is a short

summary: On November 29, 1957, they completed the purchase of an unimproved tract of land containing 10 acres in Mallard Creek Township, Mecklenburg County. Their purpose was to construct a trailer or mobile home park to accommodate 75 units, each on a site approximately 40 by 100 feet. Their plan was to complete the entire development in three stages, beginning at Perkins Road and extending eastward until the entire construction was completed. Area 1, as surveyed and mapped, was designed to accommodate 25 units.

Soon after the purchase in 1957, development work on Area 1 began. The owners graded the entire area. They graded and surfaced a street from Perkins Road eastwardly near the center of this area, deadending near its eastern boundary. Two wells were bored, of sufficient capacity to meet the needs of 25 units. The wells were on the south side of the street. Water and sewer lines were laid, a septic tank was installed, power lines were erected, and concrete patios and footings were poured on the 14 sites north of the street. A mobile home was in place on each of these sites. A third, or reserve, well was being completed, also on the south side of the street. The owners were moving toward the installation of 11 sites south of the street. Already they had spent $12,000.00 to $15,000.00 at the time the inspector gave the order on August 16, 1962.

From the beginning, it was the purpose of the owners to develop Area 2 directly to the rear and to the east as soon as Area 1 was completed; and, likewise, to complete Area 3 upon the completion of Area 2. However, actual construction was confined to Area 1. The evidence indicated that Areas 2 and 3 are of little value, or will be of little use except as parts of the development. Both areas are cut off from Perkins Road by Area 1.

The City Council passed a zoning ordinance effective January 30, 1962. According to all the evidence, the Tadlocks had no knowledge their development had been zoned until the inspector issued the notice dated August 16, 1962. The owners asked the Board of Adjustment for a hearing. After notice, the Board of Adjustment held a hearing on November 27, 1962. The owners presented evidence in substance as stated above, none of which was controverted. Neighbors appeared in opposition to the granting of a nonconforming use permit to complete the development. Their objections were upon the ground that a trailer park would make their neighborhood a less desirable place in which to live, increase the traffic hazards, and reduce the value of their properties due to the undesirable type of people who would live in the mobile homes.

The Board of Adjustment concluded:

"In accordance with Section 23-95 Paragraph (a) 'the Board shall not grant a variance whose effect would be to allow the establishment of a use not otherwise permitted in a District by this Ordinance, to extend a non-conforming use of land,' the decision of the Building Inspection Department is therefore upheld."

The Superior Court, on *certiorari,* reviewed and entered the following order:

"IT IS HEREBY ORDERED, ADJUDGED AND DE-CREED that the action of the Board of Adjustment in denying the appeal of M. R. Tadlock and wife, Lura S. Tadlock and affirming the Zoning Inspector's denial of the petitioners' request for approval of additional trailer sites is sustained. This the 12th day of February 1963. J. William Copeland, Judge Presiding."

The property owners appealed.

*Dockery, Ruff, Perry, Bond & Cobb by James O. Cobb for petitioner appellants.*
*John T. Morrisey, Sr., by T. LaFontine Odom, Sr., for respondent appellee.*

HIGGINS, J.  The Board of Adjustment for the Charlotte Zoning Area, and the Superior Court on reviewing its order, based decision on the Zoning Ordinance which provided: "A non-conforming open use of land shall not be enlarged to cover more land than was occupied by that use when it became non-conforming." The ordinance, however, authorized the Board of Adjustment, in its discretion and upon application, to allow a variance in hardship cases. The latter provision is not here involved. The landowners contend they have the legal right not only to complete the 11 additional patios for 11 home units on the south side of the street opposite the 14 units already installed, but to install 50 units on Areas 2 and 3. The zoning authorities contend any additional installations subsequent to January 30, 1962, would be an enlargement of the use and hence prohibited by the ordinance.

According to the evidence, which is not in conflict, the owners planned to develop the entire acreage in three area stages. Area 1 was surveyed, mapped and graded. Actual construction of home foundations, streets, water, sewer, and light were completed, or were under way for all of Area 1 before January 30, 1962. The wells from the south side of the street furnish water for the units installed on the north side. The evidence not being in dispute, questions of law and not of fact arise. *Johnson v. Board of Education,* 241 N.C. 56, 84 S.E. 2d 256; *Jarrell v.*

*Board of Adjustment,* 258 N.C. 476, 128 S.E. 2d 879. What is said here is not in conflict with the case *In Re Appeal of Hasting,* 252 N.C. 327, 113 S.E. 2d 433. In that case the evidence as to essential facts was in conflict, permitting the Board of Adjustment to make the findings.

Inasmuch as the evidence is free of conflict as to the determinative facts, whether completion of Area I as planned is an enlargement of a nonconforming use becomes a question of law. "An entire tract is generally regarded as within the exemption of an existing nonconforming use, although the entire tract is not so used at the time of the passage or effective date of the zoning law." 58 Am. Jur., "Zoning," § 151.

The case of *Kessler v. Smith,* 104 O.A., 213, 142 N.E. 2d 231, appeal dismissed, 146 N.E. 2d 308, appears to be exactly in point, although in factual situation not as strong in favor of the landowners. The owners had planned a trailer park for 200 units, 28 of which were completed at the time the ordinance became effective. The count said: "While Smith's business was not completely established at the time of the initiation of these proceedings in November of 1952, still there was such a substantial establishment and development thereof prior to the enactment of the ordinance that we think it comes within the protection of the due process clauses of both the Federal and State Constitutions." The owners were permitted to complete the project.

In *Commissioners v. Petsch,* 172 Neb. 263, 109 N.W. 2d 388, the court said: "In other words, where a trailer-court project is partially completed when zoning regulations become effective, and the evidence is clear as to the extent of the project, the completed project will ordinarily determine the scope of the nonconforming use." *Meuser v. Smith,* 74 Abs. 417 (Court of Appeals of Ohio), 141 N.E. 2d 209, citing McQuillan on Municipal Corporations, 3rd Ed., Vol. 8, § 25.157, p. 272.

The undisputed evidence in this case discloses the Tadlocks, from the date of their purchase in 1957, were continuously thereafter engaged in completing plans for 25 units covering the whole of Area 1. The 14 units were completed and in use on the north side of the access road or street which they graded and surfaced with the clear intent of placing 11 other units on the south side of the street. All wells were actually located on the south side. Apparently financial limitations and not a change of plans account for the delay in completing the installations. But the evidence is plenary that the owners at all times were working towards the completion of all the installations on Area 1. "(T)he criterion is whether the nature of the incipient nonconforming use, in the light of its character and adaptability to the use of the entire parcel, manifestly implies an appropriation of the entirety to such use prior to the adoption of the restrictive ordinance." C.J.S., Vol. 101, "Zoning," § 192, p. 954.

At no time after purchase was the plan abandoned or changed. Work continued until the inspector gave notice to stop and to remove four units constructed subsequent to January 30, 1962.

Under the evidence and applicable rules of law, the appellants are entitled to complete the installation of 11 additional units in Area 1. However, by planning the development in three stages and confining actual construction to Area 1 only, the applicants as to Areas 2 and 3 fall within the rule that planning a development alone is insufficient to enlarge a nonconforming use. We have no doubt the landowners intended the full ten acres as a trailer park and that its value for other purposes is greatly reduced. However, any extension of the use beyond Area 1 rests in the discretion of the Board of Adjustment as a hardship case.

Judge Copeland should have reversed so much of the Board of Adjustment's order as denied the owners the right to complete their plans by constructing 11 additional units in Area 1. With respect to the area outside of No. 1, the Board's order should be affirmed.

The Superior Court of Mecklenburg County will remand this cause to the Board of Adjustment for the Charlotte Zoning Area, with instructions to proceed as here directed.

Reversed in part — Affirmed in part.