TRANSLAND PROPERTIES, INC., AND JOHN H. HIGH AND COMPANY, INC. v. BOARD OF ADJUSTMENT OF THE TOWN OF NAGS HEAD; CHARLES UPCHURCH, BUILDING INSPECTOR OF THE TOWN OF NAGS HEAD AND THE TOWN OF NAGS HEAD

No. 731SC492

(Filed 25 July 1973)

1. Municipal Corporations § 30— rezoning — retroactivity — building permits

A change in a zoning law generally applies retroactively to prohibit issuance of a building permit, previously applied for but not issued, for construction of a nonconforming use; however, the change in a zoning law does not revoke a previously issued building permit if prior to the change the permittee has relied upon his permit to his substantial disadvantage.

2. Municipal Corporations § 30— change in zoning ordinance— expenditures in reliance on building permits

Where 25 building permits were issued for construction of 25 condominiums on petitioners' land, construction of 12 of the condominiums had begun when the zoning ordinance was amended to prohibit such condominiums, prior to amendment of the ordinance petitioners, in good faith reliance upon the permits, had spent more than $246,000 in acquiring the land, clearing, grading and installing streets for the entire project, constructing curbing, gutters and sidewalks for the entire project, and installing water and sewerage systems for the entire project, and had entered into binding contracts within subcontractors and materialmen totaling $363,088, it was held that petitioners acquired a vested legal right to complete construction of the 25 condominiums and that the building permits for the remaining 13 condominiums were improperly revoked.

APPEAL by respondents from *Fountain, Judge,* 9 April 1973 Session of DARE County Superior Court.

This is a civil action heard below by the superior court upon certiorari to the Board of Adjustment of the Town of Nags Head concerning the revocation of petitioners' previously

issued building permits to construct a condominium project in the Town of Nags Head, North Carolina.

On 8 February 1972, after having amended its zoning ordinance to permit condominium buildings on petitioners' land, the Board of Commissioners issued to petitioners 25 building permits for the construction of 25 condominium buildings on a parcel of land within a much larger tract zoned for multi-family dwellings. Prior to 1 May 1972 petitioners had substantially begun the physical erection of 12 condominium buildings, designated as buildings A through L of "The Villas."

On 1 May 1972 the Board of Commissioners held a public hearing to consider the readoption of the amended zoning ordinance and did adopt such ordinance which prohibited condominium dwellings on the tract of land of which petitioners' project was a part.

On 7 December 1972 petitioners' building permits for the remaining 13 buildings, designated buildings M through X of "The Villas," were revoked. Petitioners appealed the revocation to the Board of Adjustment, which Board conducted a hearing on 5 January 1973, and found that the petitioners never began construction of the 13 buildings, M through X, while the building permits were in effect, and that therefore they had no right to proceed with the project with respect to those 13 remaining condominium buildings.

On certiorari the superior court found that the Board of Adjustment erred as a matter of law (1) in refusing to find from the evidence presented that the petitioners had expended large sums of money for land, equipment, and material acquisition for construction of the buildings, and (2) in holding that such substantial expenditure did not give petitioners a vested right to continue the project. The superior court reversed the Board of Adjustment and ordered the issuance of building permits for the 13 buildings.

*Battle, Winslow, Scott & Wiley, P.A.* by *Thomas L. Young* for petitioner appellees.

*Kellogg, Wheless and White* by *Thomas L. White, Jr.* for respondent appellant.

CAMPBELL, Judge.

[1]  As a general rule, the change in a zoning law *does apply* retroactively to prohibit issuance of a building permit, previously applied for but not issued, for construction of a "nonconforming" use. See Annot., 50 A.L.R. 3d 596 (1973).

But, also generally, the change in zoning laws *does not* work to revoke a previously issued building permit if prior to the law change the permittee has relied upon his permit to his substantial disadvantage. See Annot., 49 A.L.R. 3d 13 (1973).

Additionally, change of zoning law does not revoke a previously issued building permit if the zoning ordinance also contains a "saving clause" exempting previously issued, valid building permits. See Annot., 49 A.L.R. 3d 1150 (1973).

It has been held in North Carolina that a permittee acquires a vested right to carry on a nonconforming use of his land under an issued building permit if he has made substantial beginning of construction and has incurred substantial expense. It is not required that he have completed construction prior to the zoning law amendment. *Warner v. W & O, Inc.,* 263 N.C. 37, 138 S.E. 2d 782 (1964); *In re Tadlock,* 261 N.C. 120, 134 S.E. 2d 177 (1964).

Without a saving clause in the local zoning ordinance, the permittee must have "begun construction" under his permit prior to the change of the zoning ordinance which thereafter prohibits the use as originally intended under his building permit. *Town of Hillsborough v. Smith,* 276 N.C. 48, 170 S.E. 2d 904, 49 A.L.R. 3d 1 (1969).

With a saving clause the permittee must "begin construction" within the time allowed by the saving clause *after* the effective date of the zoning ordinance amendment. *In re Appeal of Supply Co.,* 202 N.C. 496, 163 S.E. 462 (1932).

In the instant case the amended zoning ordinance was enacted on 1 May 1972. Section 21 of that amended ordinance provides that the amended law shall not operate to require change of use of any building or plans for which a building permit has been granted prior to the time of passage of the ordinance, provided, however, "that where construction is not begun under such outstanding permit within a period of one hundred and eighty (180) days subsequent to the passage of this ordinance or where it has not been prosecuted to completion

within eighteen (18) months subsequent to passage of this ordinance, any further construction or use shall be in conformity with the provisions of this ordinance."

Under Section 21 of the zoning ordinance petitioners must have "begun construction" within 180 days of the effective date of the zoning ordinance or by 29 October 1972.

Having established *when* the petitioners must have begun construction of the remaining 13 buildings, designated M through X of "The Villas" project, the question determinative of this appeal is what conduct constitutes "beginning construction"?

In *Town of Hillsborough v. Smith, supra,* our Supreme Court wrote:

"In this respect, we perceive no basis for distinction between the landowner who, with the requisite good faith, and reliance upon the permit, expends money in activity resulting in visible, physical changes in condition of the land and one who, with like good faith and reliance upon the permit, expends a like amount in the acquisition of construction materials or of equipment to be used in the proposed building. Likewise, we find no basis for a distinction between such a landowner and one who, in like good faith and reliance upon the permit, incurs binding contractual obligations requiring him to make such expenditures for such construction or for the acquisition of such materials or equipment. It is not the giving of notice to the town, through a change in the appearance of the land, which creates the vested property right in the holder of the permit. The basis of his right to build and use his land, in accordance with the permit issued to him, is his change of his own position in bona fide reliance upon the permit."

The *Hillsborough* case concluded that one acquires a vested right to build pursuant to a permit previously issued him if he (1) expends money in the acquisition of construction materials, (2) expends money in the acquisition of equipment to be used in the proposed building, (3) incurs binding contractual obligations requiring him to make expenditures for construction, or acquisition of materials or equipment, or (4) expends money for acquisition of land under a previously held option in reliance upon the building permit. A vested right arises out of sub-

stantial expenditure for any of the above purposes in reliance upon a building permit issued to him, irrespective of the fact that such expenditures and actions by the holder of the permit do not result in any visible change in the condition of the land.

[2]   Prior to 29 October 1972, when the building permits issued to petitioners expired under the saving clause of the zoning ordinance, the entire Villas project had cost petitioners a considerable amount of money. The land on which the buildings M through X were to be located was acquired on 1 August 1972 for $32,563.00. Petitioners had substantially cleared, graded, and installed all streets for the entire project and constructed curb, gutters and sidewalks for a total expenditure of $77,853.37 prior to 29 October 1972.

Beginning on 15 March 1972 petitioners installed a water system required to serve the entire project upon an expenditure of $33,234.06. On 2 August 1972 they began installation of a sewerage treatment plant required to serve the entire project upon an expenditure of $102,664.24.

In October 1972 petitioners had cleared and graded the lots for buildings M through X.

While it is not clear from the evidence when construction contracts were entered into, prior to the time the building permits were revoked, petitioners had entered into binding contractual obligations with subcontractors and materialmen totaling $363,088.86.

Under the theory of the *Hillsborough* case such expenditures are clearly substantial, are concerned with the acquisition of land, of equipment to be used in, or with respect to, the buildings, and are contractual obligations for the physical erection of the buildings.

Such expenditures, made in good faith reliance upon the previously issued building permits during the period of time within which the petitioners had a legal right to proceed with construction under the permits, create a vested legal right to complete the construction of "The Villas" condominium project unhampered by the amended zoning ordinance. The Board of Adjustment erred as a matter of law in holding that the petitioners had no legal right to continue construction and the

superior court was correct in so finding and directing the reinstatement of the building permits as ordered by Judge Fountain.

Affirmed.

Judges BRITT and BALEY concur.