IN THE MATTER OF THE APPLICATION OF CAMPSITES
UNLIMITED, INC.

No. 7420SC678

(Filed 16 October 1974)

1. Counties § 5; Municipal Corporations § 30— zoning ordinance — good
faith expenditures before passage

The developer of a lakeside campsite project did not act in bad
faith in beginning work on the project with knowledge that a county
zoning ordinance affecting the property was being contemplated where
there was no evidence that the developer knew that the proposed use
would be prohibited by the zoning ordinance, the specific zoning classi-
fication for the property having first been considered after the
work was begun and only shortly before the ordinance was passed.

2. Counties § 5; Municipal Corporations § 30— zoning ordinance — sub-
stantial expenditures before passage

The developer of a campsite project made substantial expenditures
on the project prior to enactment of a county zoning ordinance which
would prohibit the project, notwithstanding the amount expended
constitutes less than ten percent of the projected total cost of the
project, where he had paid or become obligated to pay $275,000 of
which $156,000 was for the land, and where roads had been staked
off and graded, maps had been recorded, and substantial engineering
and surveying services had been performed.

3. Counties § 5; Municipal Corporations § 30— zoning ordinance — non-
conforming use — entire project

Although roads had been cut in only five of the eight sections of
a campsite development at the time a county zoning ordinance pro-
hibiting the project was passed, the entire development constituted a
nonconforming use where the economic feasibility of the project de-
pended on the development of the entire area and the primary reason
for division of the property into eight sections was to facilitate a
system for filing plats in the office of the register of deeds.

Judge VAUGHN dissents.

APPEAL by applicant from Seay, Judge, 4 February 1974
Session of STANLY County Superior Court. Heard in the Court
of Appeals 19 September 1974.

This case arose by virtue of the application of Campsites
Unlimited, Inc. (hereinafter Applicant), to the Stanly County
Planning Administrator for permission to use its property as a
nonconforming use under a Stanly County zoning ordinance.
This ordinance was enacted on 16 April 1973 subsequent to the
commencement of construction on a campsite project to be de-
veloped by the Applicant on Lake Tillery. The ordinance zoned

the property of the Applicant R-20 which required, among other things, a 20,000 square foot lot size requirement. This destroyed the plans of Applicant for a campsite.

The application referred to was denied by the Planning Administrator, whereupon Applicant requested an appearance before the Board of Adjustment of Stanly County, (hereinafter Board). Applicant appeared before the Board and on 6 August 1973, the Board entered an order finding that Campsites had established a nonconforming use in five of eight sections into which the property had been divided, but that Applicant would have to comply with the minimum lot size requirement of the R-20 district.

Applicant petitioned the superior court for a writ of certiorari objecting to the record before the Board, contending generally that it was neither accurate nor complete. The superior court remanded the proceeding and ordered the Board to receive additional evidence to clarify the basis for the denial of the application. Notice was duly published and a hearing was held on 21 December 1973 in the Stanly County Courthouse.

The testimony at this hearing revealed that Campsites Unlimited, Inc., was chartered as a North Carolina corporation on 5 January 1973, all stock therein being owned by C. L. Darnley and his family. Prior to this in June 1972, Darnley began negotiating with a Mrs. Efird for the purchase of a 155-acre tract adjacent to Lake Tillery. This tract is now the subject of this appeal. In November, 1972, papers were signed in connection with the property. By deed dated 25 January 1973, Mrs. Efird conveyed the tract to Applicant for $156,000.

Commencement of the development actually began in January, 1973, when Darnley secured the services of Wiggins-Rimer and Associates/Southeastern Surveys, professional engineers and surveyors from Durham. This company proceeded to make a perimeter survey of the entire property and a preliminary study of a central waste treatment facility for the campsite. Darnley expressed the desire to complete the project by March 1 to capitalize on the seasonal market for recreational lots of this type.

In February, Darnley contracted to have some sign printing done and arranged to convey all commercial rights in the project to Five Star Enterprises. An aerial survey of the prop-

erty was made after which percolation tests were conducted by the Stanly County Health Department.

Around the first of March, Darnley entered a contract with a grading service to do the road and street grading on the project. On 4 March 1973, survey parties began staking out the streets. Woodcutters came right behind the survey party cutting the trees after which grading began on 15 March. This continued through the date of the enactment of the ordinance. Later in March, promotional literature was printed. At the end of March, the Applicant executed a deed conveying property to be used as a marina and restaurant.

Various other items were being taken care of during this period, among them the preparation of a disclosure report to the Department of Housing and Urban Development, and the negotiation of a lease for the use of lake front property owned by Carolina Power and Light Company.

On 16 April 1973, the County Commissioners enacted the first zoning ordinance in the history of Stanly County. It placed the Applicant's property in the R-20 classification which precluded its development as a campsite. As of that date, Applicant had expended or had become obligated to pay approximately $275,000 in connection with the development. Of this, $156,000 was for the property.

There was evidence that zoning had been considered in Stanly County since 1968. A planning administrator was not appointed until 6 July 1972. Prior to that time only a planning board existed. In May 1972 the County entered a contract with the Department of Natural and Economic Resources for assistance in preparing a comprehensive plan which eventually resulted in the 16 April 1973 ordinance.

There was evidence that the planning board was considering zoning in the county for some time before April 1973, but no specific zoning classification had been settled upon until after an informal courtesy hearing held 28 March 1973. There was no public notice of this hearing and Darnley did not attend or even know of it. At that hearing, a show of hands vote by citizens opposing the campsite project resulted in a motion adopting an R-20 classification for the campsite. Notice was immediately given of a public hearing to be conducted on 16 April 1973. At that time, the zoning ordinance in question was passed.

On the above evidence, the Board of Adjustment, by order dated 30 January 1974, found that Campsites had failed to establish a vested right to carry on a nonconforming use of its land and ordered its application denied. Applicant excepted and objected whereupon the matter came on for hearing before the Stanly County Superior Court which treated the appeal as a writ of certiorari to review the record for alleged errors of law.

The superior court affirmed the foregoing order. The Applicant appealed.

*Russell J. Hollers and John V. Hunter III for Applicant-appellant.*

*Brown, Brown & Brown by Richard L. Brown, Jr., for Stanly County.*

*Patterson and Doby by Henry C. Doby, Jr., for Protestant-appellees.*

CAMPBELL, Judge.

[1]    The appellant basically contends that at the time it knew or could have known of a proposed zoning ordinance affecting its land it had acquired a vested right to proceed with construction notwithstanding that the contemplated use would be nonconforming. The appellees contend that the appellant knew that proposed zoning was being contemplated and that this knowledge prevented the appellant from acting in good faith in reliance on the existing law.

The appellee Stanly County specifically relies on the "good faith" rule as stated in *Town of Hillsborough v. Smith,* 276 N.C. 48, 56, 170 S.E. 2d 904, 910 (1969), to-wit:

> "The 'good faith' which is requisite under the rule of *Warner v. W & O, Inc., supra,* is not present when the landowner, with *knowledge* that the adoption of a zoning ordinance is *imminent and that, if adopted, it will forbid his proposed construction and use of the land,* hastens, in a race with the town commissioners, to make expenditures or incur obligations before the town can take its contemplated action so as to avoid what would otherwise be the effect of the ordinance upon him." (Emphasis added.)

The appellees make a great deal of this language. Their reliance is unfounded. This is due to the fact that the rule requires

knowledge on the part of a landowner that a zoning ordinance will prohibit the contemplated use to which he was putting his land.

In this case, there was evidence that zoning in Stanly County was being contemplated as early as 1968, but there is a marked absence of evidence indicating the particular type of zoning ordinance contemplated. At most there was ambiguity. The State planner from the Department of Natural and Economic Resources, who was assisting the County, was suggesting one thing, the planning board suggesting something else. This continued until 28 March 1973 when certain protestants at an informal courtesy hearing voiced objection to the proposed project. At that time, the planning board considered for the first time a specific zoning classification for the area in question. The appellant admitted to knowledge of zoning in general in Stanly County as early as the fall of 1972, but this is not knowledge that the zoning is imminent and that it would forbid the proposed use. Furthermore, it was not clear whether public notice was given for the courtesy hearing. In any event, the courtesy hearing was an informal county hearing which would not constitute legal notice to the appellant. It was uncontested that he was not present at the meeting and had no knowedge of it.

Therefore the finding by the Board of Adjustment and its affirmance by the superior court that the appellant was not acting in good faith prior to 16 April 1973, is unsupported by the evidence, is arbitrary and is in error as a matter of law.

[2] "To acquire [a] vested property right it is sufficient that, prior to the . . . enactment of the zoning ordinance and with the requisite good faith, he make a substantial beginning of construction and incur therein substantial expense." *Town of Hillsborough v. Smith, supra,* at 54, 170 S.E. 2d at 909. The appellees contend that the amounts expended constitute less than ten percent of the projected total cost of the development and that this is not a substantial expenditure in contemplation of the law. This is without merit. "[O]ne who, in good faith . . . makes expenditures or incurs contractual obligations, substantial *in amount,* incidental to or as part of the acquisition of the building site or the construction . . . may not be deprived of his right to continue such construction and use. . . ." *Town of Hillsborough v. Smith, supra,* at 55, 170 S.E. 2d at 909. (Emphasis added.) The record is replete with evidence of the con-

In re Campsites Unlimited

struction begun and expenditures made by the appellant prior to the adoption of the ordinance on 16 April 1973. He had paid or had become obligated to pay approximately $275,000 of which $156,000 was for the land. Roads had been staked off and graded, supplies purchased, maps recorded, and substantial engineering and surveying services incurred. We find that the evidence in this case compels the conclusion as a matter of law that substantial expenditures had been incurred so as to qualify the project as a nonconforming use.

[3] The appellant also contends that should this Court find the development to be a nonconforming use, it should so find as to the entire development and not just sections one through five. It so happened that at the time the zoning ordinance intervened, the appellant had only cut roads in five of the eight sections. On this basis, the Board originally found a nonconforming use as to just those five sections. This was error. The evidence established that the economic feasibility of the campsite project depended implicitly on the development of the entire area in question. It further established that the primary reason for the division of the property into eight sections was merely to facilitate a legible, useful and recordable system for filing plats in the register of deeds office. There was work being continuously carried out in all sections of the project at the same time. The evidence compels a finding that this is not a section development and that the nonconforming use applies to the entire project area. *In re Tadlock,* 261 N.C. 120, 134 S.E. 2d 177 (1963).

The decision of a board of adjustment is final as to facts found provided there is some evidence to support such facts. The courts are empowered to review errors in law but not facts. Here there was a question of law. The Court can give relief against orders which are arbitrary, oppressive, or attended with manifest abuse of authority and ones which are unsupported by the evidence. See *Lee v. Board of Adjustment,* 226 N.C. 107, 37 S.E. 2d 128 (1946). The order of the Board of Adjustment as affirmed by the Stanly County Superior Court was arbitrary as not supported by the evidence and was in error as a matter of law.

Consequently, we reverse and remand the case to the Superior Court of Stanly County with the direction that the court enter judgment in this matter declaring the entire development in question to be a nonconforming use and further declaring the

property free of the effect of the zoning ordinance of 16 April 1973.

Reversed and remanded.

Judge PARKER concurs.

Judge VAUGHN dissents.